## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **COMPUTER AUTOMATION SYSTEMS, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**INTELUTIONS, INC.,**<br><br>**Defendant.** | **Civil No. 13-1292 (GAG)** |

## OPINION AND ORDER

Computer Automation Systems, Inc. ("Plaintiff") sues Intelutions, Inc. ("Defendant") for copyright infringement, misappropriation of trade secrets, fraud, and tortious interference with contractual relations, seeking monetary damages and injunctive relief. (See generally Docket No. 1.) Defendant moved to dismiss, Plaintiff opposed, and Defendant replied. (See Docket Nos. 19, 26, & 29.) For the following reasons, the court **DENIES** Defendant's motion to dismiss at Docket No. 19.)

### I.      Standard of Review

"The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief." Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (citations omitted) (internal quotation marks omitted). "This short and plain statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Civil No. 13-1292 (GAG)

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted.  See FED. R. CIV. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  The court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." Id. at 555.  In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' -'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

A plaintiff need not allege sufficient facts to meet the evidentiary *prima facie* standard. See generally Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49 (1st Cir. 2013).  *Prima facie* elements "are part of the background against which a plausibility determination should be made." Id. at 54 (external citations omitted).  "[T]he elements of a *prima facie* case may be used as a prism to shed light upon the plausibility of the claim." Id. (emphasis added).

## II.    Factual and Procedural Background

Plaintiff is incorporated and keeps its principal place of business in Arkansas.  (See Docket No. 1 at 1.)  Defendant is incorporated and keeps its principal place of business in Puerto Rico.  (Id.)  Plaintiff is an innovative technology company dedicated to solving problems in

Civil No. 13-1292 (GAG)

education.  The company created its original product, Special Education Automation Software ("SEAS"), to assist school districts and state education departments with complying with federal reporting requirements under the Individuals with Disabilities in Education Act.  Plaintiff employs 120 associates in eleven states.  (Id. at 3.)

SEAS Education is a division of Plaintiff's company.  Since 1995, SEAS Education has assisted numerous school districts through its unique software products that save educators time in registering reporting requirements.  The products ensure that special needs students receive time and attention from teachers and administrators.  (Id.)

In 2006, Plaintiff contracted with the Society of Education and Rehabilitation of Puerto Rico ("SER") to provide SEAS software products to the public education system in Puerto Rico. From 2006 to 2012, Plaintiff provided the Puerto Rico Department of Education (the "PRDE") with the appropriate software licensing of Plaintiff's proprietary systems and technical support to enable the PRDE to compile and manage the essential data for the special education students of Puerto Rico.  (Id.)  For six years, the PRDE complied with the Department of Education's monitoring requirements by using the program.  (Id.)

Plaintiff owns copyrights for several aspects of SEAS software, specifically the SEAS Stored Procedures, SEAS Source Code, SEAS Schema, and Data Dictionary.  (Id. at 4.)  They were completed in 2002 and 2003, and the effective date of their copyright registration is October 17, 2012.  (See Docket Nos. 1-1–1-4.)

In 2010, the PRDE contracted with Defendant for local assistance with Plaintiff's product.  Defendant elaborates that it contracted with the PRDE on an hourly basis to set up a data warehouse pertaining to the requisite data for the PRDE's obligations to the Department of Special Education in May 2010.  (Docket No. 19 at 2-3.)  Defendant became aware that the

Civil No. 13-1292 (GAG)

PRDE and Plaintiff were under contract.  (See Docket No. 1 at 4.)  Accordingly, Plaintiff began

to provide Defendant with data related to special education and special needs students in Puerto

Rico in June 2010.  Over the next several months, Defendant insisted that Plaintiff's data was

insufficient for the work it needed to do for Plaintiff and the PRDE.  Consequently, Defendant

needed a backup of the entire SEAS software system.  (Id.)  Defendant also represented that it

needed SEAS to service the relationship between Plaintiff and the PRDE.  (Id.)

Defendant assured Plaintiff that its intellectual property would be protected and Plaintiff

set up a file transfer protocol ("FTP") site on one of its servers to transmit a complete software

backup to Puerto Rico on a weekly basis.  (Id. at 5.)  Defendant accessed the SEAS Stored

Procedures, Source Code, and Schema.  (Id.)  Plaintiff also sent a complete Data Dictionary

during the same timeframe.  The Data Dictionary is a very large document that documents the

structure and field level details of every table in the database and the relationship between each

table.  (Id.)

After Plaintiff provided the software to Defendant, Lourdes Abellas, an employee of

Plaintiff's in Puerto Rico, met with Defendant's representatives.  She sought to arrange a

conference call between Defendant's representatives, Reynaldo Arroyo and Hiram Rivera, and

Plaintiff's personnel in Arkansas.  The meeting took place on or about August 23, 2010.  (Id.)

Following the conference call, Defendant's representatives "were discussing that it was much

better to have a backup of the entire CAS software system rather than just specific files for the

purpose of another concept they were discussing, 'reverse engineering.'"  (Id. at 5-6.)

In or around August 2011, Defendant engaged in negotiations with the PRDE to develop

a new software application, Mi Portal Especial ("MiPE"), to replace Plaintiff's program.  (Id. at

6.)   Plaintiff was unaware of the negotiations between the PRDE and Defendant.  (Id.)  In

Civil No. 13-1292 (GAG)

September 2012, the PRDE verbally notified Plaintiff of its intent to replace SEAS with MiPE. (Id.)  Plaintiff claims MiPE is an illegal copy of SEAS that Defendant created for the PRDE. (Id.)  Plaintiff alleges this violates federal copyright and common law and has damaged its reputation with other clients that use a software license from Plaintiff to monitor their own special education needs.  (Id. at 7.)

On November 16, 2012, Plaintiff filed a complaint against Defendant in the United States District Court for the Western District of Arkansas in which it requested a preliminary injunction.  (See Docket No. 19 at 1.)  The court dismissed the claim for lack of *in personam* jurisdiction.  (Id.)  Plaintiff filed the complaint in this case on April 8, 2013.  (Docket No. 1.)

III.    Discussion

Defendant moves to dismiss on several grounds: 1) the Copyright Act preempts the Puerto Rico law claims for trade secret violations, tortious interference with contract, and fraud; 2) the Puerto Rico Trade Secrets Act preempts the misappropriation of trade secrets claim, and; 3) Plaintiff fails to state a claim for any of these causes of action.  (Docket No. 19 at 1-2.) Specifically, Defendant claims Plaintiff is not entitled to the presumption of copyright validity because the October 17, 2012 registration precludes entitlement under 17 U.S.C. § 410(c).  (Id. at 2.)  Defendant also moves to dismiss for failure to join the PRDE under Federal Rule of Civil Procedure 19(a), and, in the alternative, for joinder of the PRDE.  (Id.)

A.    Preemption under the Copyright Act

Defendant claims that Section 301(a) of the Copyright Act preempts Plaintiff's trade secrets, tortious interference with contract, and fraud claims.  Section 301(a) states, in relevant part, "[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by this title.  Thereafter, no person is

Civil No. 13-1292 (GAG)

entitled to any such right or equivalent right in any such work under the common law or statutes of any state."  17 U.S.C. § 301(a).  Section (b) provides several exceptions: "Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to subject matter that does not come within the subject matter of copyright," or "activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright . . . ."  Id.  § 301(b).

The First Circuit explained this statute:

> Section 301(a) precludes enforcement of any state cause of action which is equivalent in substance to a federal copyright infringement claim.  Courts have developed a functional test to assess the question of equivalence.  If a state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action.  Not every extra element of a state claim will establish a qualitative variance between the rights protected by federal copyright law and those protected by state law.  For example, a state claim of tortious interference with contractual relations may require elements of awareness and intentional interference not necessary for proof of copyright infringement. And yet, such an action is equivalent in substance to a copyright infringement claim where the additional elements merely concern the extent to which authors and their licensees can prohibit unauthorized copying by third parties.  Similarly, a state law misappropriation claim will not escape preemption under Section 301(a) simply because a plaintiff must prove that copying was not only unauthorized but also commercially immoral, a mere label attached to the same odious business conduct.  Nonetheless, a trade secrets claim that requires proof of a breach of a duty of confidentiality stands on a different footing.  Such claims are not preempted because participation in the breach of a duty of confidentiality – an element that forms no part of a copyright infringement claim – represents unfair competitive conduct qualitatively different from mere unauthorized copying.

Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1164-65 (1st Cir. 1994), rev'd on other grounds, Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 160 (2010).  Because the

Civil No. 13-1292 (GAG)

Puerto Rico Trade Secrets Act requires a breach of a duty of confidentiality, this claim escapes preemption. See P.R. LAWS ANN. tit. 10, § 4134(b)(2)(B).

Defendant claims that the Copyright Act also preempts a claim for tortious interference with contract. At this stage, the court denies Defendant's request. The First Circuit implied that a tortious interference claim and a copyright infringement claim could co-exist if the "evidence relating to the alleged copyright . . . violations ha[s] no bearing on whether the representations [that comprise tortious interference] were made." Yankee Candle Co. v. Bridgewater Candle Co., 259 F.3d 25, 47 (1st Cir. 2002). Furthermore, the court elaborated, "evidence relevant to a failed claim might be of independent relevance to a surviving claim resting on different elements." Id. It would be improper to dismiss this claim at this stage without factual development. Were the court to rule as Defendant asks in the immediate and should Defendant convince the court to dismiss the copyright claim at any point, Plaintiff would be unjustly foreclosed from asserting its claim for tortious interference. Dismissal is therefore premature.

Plaintiff alleges that Defendant tortiously interfered with its agreement with the PRDE because it developed a relationship with the PRDE as an intermediary between the PRDE and Plaintiff. The extent of the infringement on the copyright has no impact on this allegation – Defendant either did or did not interfere with the relationship. If the court determines that Defendant was at fault and interfered with the contract based on copyright infringement, then preemption would be appropriate. But whether Section 301 preempts this claim is a question the court will grapple with following discovery. The court is confident in its conclusion because the Yankee Candle court affirmed a district court's decision to proceed with the tortious interference claim while avoiding reintroduction "of evidence whose main thrust was to establish counts already dismissed [which included the copyright infringement claim]." Id. The question thus

Civil No. 13-1292 (GAG)

remains for resolution after discovery. See Grumman Sys. Support Corp., 36 F.3d at 1164-65 (tortious interference "may require elements of awareness and intentional interference not necessary for proof of copyright infringement," but "such an action is equivalent in substance to a copyright infringement claim . . . .").

The Copyright Act also does not, as a general principle that Plaintiff points out, automatically preempt claims for fraud. See Seng-Tiong Ho v. Taflove, 648 F.3d 489, 502 (7th Cir. 2011). Preliminarily, the parties dispute the applicable elements of fraud based on the facts at bar. Defendant claims that the Puerto Rico principle of *dolo* applies, which concerns fraud between parties to a contract.[1] Plaintiff responds that Plaintiff and Defendant are not parties to a contract, but that a general prohibition against fraud by misrepresentation nonetheless applies. The cause of action Plaintiff invokes consists of the following elements: (1) that a false representation was made; (2) that the plaintiff reasonably and foreseeably relied thereon; (3) that the plaintiff was injured by his reliance; and (4) that the defendant intended to defraud the plaintiff. Wadsworth, Inc. v. Schwarz-Nin, 951 F. Supp. 314, 323 (D.P.R. 1996) (citation omitted).

The court sees no reason to dismiss the fraud claim simply because Plaintiff and Defendant are not parties to a contract, and Defendant neglects to establish why fraud may not exist outside of *dolo*. See Prado Alvarez v. R.J. Reynolds Tobacco Co., 405 F.3d 36, 44-45 (1st Cir. 2005) (recognizing a distinction between fraud by misrepresentation and contract-based fraud, or *dolo*).

---

[1] "Dolo can take two forms: (1) dolo in the formation of contracts, and (2) dolo in the performance of contractual obligations." Portuges-Santana v. Rekomdiv Int'l., 657 F.3d 56, 69-60 (1st Cir. 2011).

Civil No. 13-1292 (GAG)

Plaintiff avers that the critical distinction lies in Plaintiff's and Defendant's relationship based on trust and confidence and that Defendant persuaded Plaintiff to transmit its intellectual property, "despite assurances that the property would be protected." (Docket No. 26 at 18.) For the same rationale the court employed in refusing to dismiss the tortious interference claim on preemption grounds, the court denies this aspect of the motion as well. Discovery will elucidate the extent to which the copyright infringement and fraud claims overlap. The injury Plaintiff suffered as a result of relying on the purported false representation seems to directly coincide with the copyright claim, but the First Circuit's jurisprudence informs the court that it should determine this matter based on evidence and not on plausibility, particularly because this claim will have little to no impact on discovery. See Yankee Candle Co. 259 F.3d at 47.

B. Preemption under the Puerto Rico Trade Secrets Act

Defendant asserts that Plaintiff's claim for misappropriation of trade secrets under Article 1802 is preempted by Puerto Rico's Trade Secrets Act. See P.R. LAWS. ANN. tit. 10, § 4140. Plaintiff seems to agree and asserts that it marshaled pleadings sufficient to put Defendant on notice that this action arises under the Trade Secrets Act. (See Docket No. 26 at 16.) Plaintiff also asks the court for leave to amend to more clearly state the allegation, which the court **GRANTS** in this limited perspective. (Id.) Defendant's only objection is that the Trade Secrets Act is preempted by the Copyright Act, and amendment is thus futile. (See Docket No. 29 at 5.) The court previously addressed this concern and rehashing the argument would be redundant.

The court **DENIES** Defendant's motion to dismiss on all preemption grounds. Should any facts come to light that necessitate preemption, the parties shall inform the court.

C. Failure to State a Claim

1. **Copyright Infringement**

9

Civil No. 13-1292 (GAG)

Defendant moves to dismiss Plaintiff's copyright infringement claim for failure to state a claim. (Docket No. 19 at 4-7.) Specifically, Defendant accuses Plaintiff of failing to plausibly allege a *prima facie* case of copyright infringement and that SEASWeb and MiPE bear any similarities. The court addresses both accusations in turn.

a. <u>*Prima Facie* Copyright Infringement</u>

A claim for copyright infringement requires ownership of a valid copyright and copying of constituent elements of the work that are original. <u>Lotus Dev. Corp. v. Borland Int'l., Inc.</u>, 49 F.3d 807, 813 (1st Cir. 1995). A plaintiff must prove that the work "as a whole is original and that the plaintiff complied with applicable statutory formalities." <u>Id.</u> Certificates of copyright registration constitute *prima facie* evidence of copyrightability. <u>Id.</u> A plaintiff must also prove, secondly, that the "alleged infringer copied plaintiff's copyrighted work as a factual matter" through direct evidence or that the alleged infringer had access to the copyrighted work and "that the offending and copyrighted works are so similar that the court may infer that there was factual copying (i.e., probative similarity)." <u>Id.</u>

"[A copyright] registration obtained after five years benefits from no presumption, and the weight given to such a registration is 'within the discretion of the court.'" <u>Brown v. Latin Am. Music Co.</u>, 498 F.3d 18, 23 (1st Cir. 2007) (quoting 17 U.S.C. § 410(c)). Plaintiff thus has the burden of proving the validity of its copyright. <u>Id.</u> at 24. The Copyright Act extends copyright protection "to the individual who actually created the work." <u>Soc'y of the Holy Transfiguration Monastery, Inc. v. Archbishop Gregory of Denver</u>, 689 F.3d 29, 40 (1st Cir. 2012).

Defendant claims, "The only evidence [Plaintiff] proffers in support of its claim of ownership of a valid copyright are the four copyright registrations attached to its Complaint . . .

10

Civil No. 13-1292 (GAG)

.” (Id. at 5.) "The date of effectiveness of these registrations," Defendant points out, "is October 17, 2012, and the date of 'completion,' is either 2002 or 2003. Thus, approximately ten years have elapsed between the date of completion and the date of registration." (Id.) Plaintiff's complaint and the attachments thereto substantiate Defendant's assertion. (See generally Docket No. 1.) Defendant proceeds to cite Section 410(c) of the Copyright Act to support the proposition that Plaintiff fails to establish a *prima facie* case: certification of a registration "made before or within five years after first publication of the work shall constitute *prima facie* evidence of" the copyright's validity, while "[t]he evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." (Docket No. 19 at 5.)

The section of the statute Defendant cites clearly does not align with Defendant's interpretation. Defendant's reading requires the court to conclude that a *prima facie* case cannot be established if the registration occurred more than five years after first publication of the work. The cited subsection, however, affirmatively establishes presumption of a *prima facie* case but does not preclude works registered outside the five-year window from protection. The subsequent sentence to the five-year rule obviously and directly contradicts Defendant's position. The court has discretion to weigh the evidence supporting or opposing copyright validity for registration after five years of first publication of the work. This passage not only leaves the matter to the court's discretion, it also unquestionably references the evidentiary weight of a plaintiff's claims, which implies the matter is better suited for summary judgment.

The explanatory parentheticals Defendant attaches to cases that purportedly support its position actually buffer the court's reading of the statute. Defendant explains that one case holds, "Where a work was first published in 1982 and the copyright was registered in 1988, the

Civil No. 13-1292 (GAG)

'district court was not bound to accept the validity of the copyright.'" (Docket No. 19 at 5.)  The core question Defendant thus raises is whether Plaintiff bears the burden of establishing validity of its copyright at this stage, but this assertion is surplusage because this whole case surrounds copyright infringement and assessing the claim necessitates an analysis of the copyright's validity.  But, here and now, Defendant does nothing to challenge the copyright's legitimacy and the court bears no burden to substantiate Defendant's claim with legal justification.

Still, Plaintiff bears the burden of proving copyright validity.  The Copyright Act protects the individual who actually created the work.  <u>Soc'y of the Holy Transfiguration Monastery</u>, 689 F.3d at 40 (citing 17 U.S.C. § 201(a)).  "To show ownership of a true copyright, 'a plaintiff must prove that the work as a whole is original and that the plaintiff complied with statutory formalities.'"  <u>Id.</u> (quoting <u>Lotus Dev. Corp.</u>, 49 F.3d at 813).  Plaintiff states in its complaint, "[Plaintiff] created its original product, Special Education Automation Software . . . ."  (Docket No. 1 at 2-3.)  Furthermore, Plaintiff created SEAS in 2002 or 2003, well before it contracted with the PRDE and worked with Defendant.  Lastly, though the court is not required to accept the validity of a copyright registered five years after its initial production, "It is generally accepted that 'a certificate of copyright registration constitutes *prima facie* evidence of copyrightability . . . .'"  <u>Id.</u>  Plaintiff presents copyrights dated October 17, 2012.  These allegations and a more developed record could plausibly create a *prima facie* case that could entitle Plaintiff to relief.

### b.  <u>Similarity between SEASWeb and MiPE</u>

Defendant next claims that Plaintiff has failed to allege similarities between SEASWeb and MiPE.  (Docket No. 19 at 6.)  Defendant states Plaintiff has never seen MiPE and cannot specifically claim which elements of its products Defendant copied.  (<u>Id.</u>)  Merely alleging that

Civil No. 13-1292 (GAG)

MiPE and SEASWeb accomplish the same function, Defendant claims, fails to clear the plausibility-of-entitlement-to-relief hurdle.  But this argument falls short to compel the court to dismiss this case.  Defendant had unbridled access to Plaintiff's product and one of Plaintiff's agents heard two of Defendant's agents discuss how to reverse engineer[2] Plaintiff's product. These allegations clear the initial hurdle of demonstrating probative similarity that allow the court to infer that there was factual copying.  Lotus Dev. Corp., 49 F.3d at 813 (evidence existed that alleged infringer had access to copyrighted work and that offending and copyrighted works were so similar that court could infer actual copying and satisfy second prong).

Defendant had access to the copyrighted work through its working relationship with Plaintiff and the PRDE, one of Plaintiff's agents heard two of Defendant's agents discuss reverse engineering, i.e., gaining access to the functional elements of Plaintiff's product, and the PRDE purportedly severed its ties with Plaintiff in favor of Defendant's new product.  It is plausible that probative similarity exists, particularly because reverse engineering implies that the works were substantially similar and the PRDE contracted with Defendant to provide services to accomplish the same objective.

Defendant also states that Plaintiff seeks to protect the utility of its product and that patents, not copyrights, satisfy that function.  (Docket No. 19 at 7.)  Plaintiff does not allege patent infringement and, therefore, is not entitled to any relief for patent infringement.  The court assesses Plaintiff's claim only in light of copyright infringement.  The court understands that Defendant is claiming that the violations Plaintiff allege are really patent issues, not copyright violations.  That may be, or it may not; however, discovery is necessary to ascertain the answer.

---

[2] Reverse engineering involves gaining access to the functional elements of a software program. Methods of reverse engineering include observing the program in operation.  Microsystems Software, Inc. v. Scandinavia Online AB, 226 F.3d 35, 38 n.1 (1st Cir. 2000).

Civil No. 13-1292 (GAG)

Lastly, Defendant claims that, pursuant to the terms of its service contract with the PRDE, it did not retain any ownership rights or control over MiPE and cannot copy, distribute, or sell it.  (See Docket No. 19 at 3.)  This is an issue of fact whose importance should be viewed in tandem with all of other germane facts revealed during discovery, not at this stage of the litigation, and it also bears on the importance of the PRDE as a party to this case.

The court **DENIES** Defendant's motion to dismiss for failure to state a claim for copyright infringement.

### 2.  Trade Secret Violations

Defendant neglects to allege any separate grounds for dismissal of Plaintiff's trade secret violations claim aside from the preemption argument despite stating that Plaintiff fails to state a claim.  Defendant's claim thus fails and the court **DENIES** the motion to dismiss the trade secret violation allegation for failure to state a claim.  See U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

### 3.  Tortious Interference with Contract

Plaintiff's claim for tortious interference is brought under P.R. LAWS ANN. tit. 31, § 5141, which encompasses tortious interference.  New Comm. Wireless Serv's., Inc. v. Sprintcom, Inc., 287 F.3d 1, 9 (1st Cir. 2002).  Its elements are as follows: 1) a contract exists between two or more parties; 2) the defendant interfered with the contract; 3) there was fault on the defendant's part; 4) damage to the plaintiff occurred, and; 5) a nexus between the plaintiff's damage and the defendant's fault exists.  Id.

"Under Puerto Rico law, the 'fault' element of tortious interference requires a stronger showing."  Id. at 10.  A defendant must intend to "interfere with the contract, knowing that this interference would cause injury to the plaintiff . . . [t]hus, to ground liability, the defendant's

14

**Civil No. 13-1292 (GAG)**

actions must at least evince quasi-delictive intent." Id. (internal citations omitted) (internal quotation marks omitted).

Defendant's motion to dismiss this claim focuses only on the first element: the existence of a contract between two or more parties. Defendant claims that Plaintiff fails to plausibly plead a claim for tortious interference for two reasons: 1) Plaintiff did not have a contract with the PRDE, and; 2) Plaintiff terminated the contract, not the PRDE, and thus may not assert a tortious interference claim over a contract it terminated. The court first addresses Defendant's second argument. Plaintiff states it had a contract with the PRDE through 2012 and that Defendant and the PRDE engaged in negotiations to develop MiPE in August 2011. (Docket No. 1 at 6.) Based on the complaint, it is plausible that a contract between Plaintiff and the PRDE existed when Defendant began negotiating with the PRDE.

Concerning the first reason, Defendant cites Plaintiff's complaint, which states in relevant part, "In 2006, [Plaintiff] entered into a contract with the Society of Education and Rehabilitation of Puerto Rico . . . ." (Docket No. 1 ¶ 9.) Defendant correctly points out that this allegation does not include the PRDE as a party to a contract and that Plaintiff's own representative rejected classifying the agreement between Plaintiff and the PRDE as a contract. (See Docket Nos. 19 at 9; 19-2.) But Plaintiff billed and shipped the product to the PRDE. (Docket No. 19-1.) Plaintiff's representative, furthermore, indicated that the PRDE was the beneficiary of the agreement. (Docket No. 19-2.) Plaintiff extended the offer of its services, the PRDE negotiated for those services, and consideration was provided. (See Docket Nos. 19-1 & 19-2.) Therefore, a contract could plausibly exist.

Defendant also asserts that Plaintiff never had a contract with the PRDE; rather, only sales agreements for periodic use of software analogous to anti-virus programs that require

Civil No. 13-1292 (GAG)

sporadic repurchasing.  (Id. at 9-10.)  However, Plaintiff states that it had a contract with the PRDE, and this is all that Plaintiff needs to do at this stage.  Resolution of the disagreement over the distinction between a sales agreement and a contract is a question of law that turns on facts. Presently, the court lacks the benefit of a record on which to base a legal conclusion.  Discovery is warranted and the court can resolve this issue with a full record and more thorough briefing on the matter.  Defendant's motion to dismiss the tortious interference claim for failure to state a claim is **DENIED**.

### 4.  Fraud

Defendant claims Plaintiff fails to plausibly plead fraud because no contract existed between the parties.  (See Docket No. 19 at 14-15.)  As the court previously stated, whether a contract existed is a question of law that turns on facts yet to become part of the record. Discovery is necessary.  Furthermore, as previously discussed, Defendant claims that the Puerto Rico principle of *dolo* applies, which concerns fraud between parties to a contract, yet Plaintiff invokes the cause of action for fraud discussed above.  The court, again, sees no reason to dismiss the fraud claim simply because Plaintiff and Defendant are not parties to a contract, and Defendant also neglects to establish why Plaintiff is precluded from asserting fraud here because they are not parties to a contract.  *Dolo* does not apply because Plaintiff and Defendant were not parties to a contract, but, as discussed above, fraud exists exclusive of *dolo*.  Defendant's motion to dismiss Plaintiff's fraud claim for failure to state a claim is **DENIED**.

### D.  Joinder and Failure to Join

Defendant invokes Federal Rule 12(b)(7) to support the assertion that the court should dismiss this action for failure to join a necessary party under Rule 19(a).  (See Docket No. 19 at

Civil No. 13-1292 (GAG)

15.)  Defendant claims that the PRDE is a necessary party.  (Id. at 16.)  Defendant avers that MiPE, the infringing product, is in sole possession of the PRDE.  (Id.)

Rule 19(a)(1) discusses persons required to be joined if feasible.  The Rule states, "A person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if" absent, "the court cannot accord complete relief among the parties," or that person "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may" either "impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a).

Defendant maintains that the alleged contractual relationship between the PRDE and Plaintiff forms the integral element of Plaintiff's tortious interference claim.  (Docket No. 19 at 16.)  Defendant also contends that MiPE is within the exclusive custody and control of the PRDE and that a potential finding of infringement implicates the PRDE's interest in, future use of, and valid ownership of MiPE.  Furthermore, according to Defendant, the PRDE requested the data backup, not Defendant, and the fraud claim would directly impose liability on the PRDE.  (Id.)

The court **DENIES without prejudice** this contention and **ORDERS** the parties to serve the complaint, motion to dismiss, opposition, reply, and this opinion and order on the Secretaries of Justice and Education of Puerto Rico.  Several questions persist as to the PRDE's role in this case and Plaintiff's complaint comes dangerously close to implying nefarious, intentional actions taken by the PRDE.  The court would benefit from the PRDE's perspective on this case and thus **ORDERS** it to brief the court on or before December 3, 2013, discussing its role in the alleged factual background, its relationship with the parties, whether a finding in Plaintiff's favor on the

17

Civil No. 13-1292 (GAG)

infringement matter would adversely impact its use of MiPE, its awareness of the facts giving rise to Plaintiff's claims, and whether it believes its rights would be substantially affected by adjudication of Plaintiff's claims.  Though neither necessarily dispositive nor outcome-determinative, the PRDE's perspective will enlighten the court.  The court thus **DENIES** Defendant's Rule 19 contentions **without prejudice** until the court receives the PRDE's submission.  Should the PRDE not submit any briefings, the court will proceed to resolve this case.  However, the PRDE may later be precluded from intervening.

## IV.    Conclusion

For the reasons discussed above, the court **DENIES** Defendant's motion to dismiss at Docket No. 19 and **DENIES without prejudice** Defendant's motion to dismiss based on Rule 19, pending the PRDE's submission.  Furthermore, Defendant may raise the preemption argument after discovery if the facts merit readdressing the issue.


SO ORDERED.


In San Juan, Puerto Rico this 4th day of November, 2013.


/S/ Gustavo A. Gelpí
GUSTAVO A. GELPI
United States District Judge